IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID H. TULLIS,

                      Plaintiff,                              Case No. 3:06 CV 7029

          -vs-

                                                    <u>MEMORANDUM   OPINION</u>

UMB BANK, N.A., et al.

                      Defendant.

KATZ, J.

This matter is before the Court on Defendant UMB Bank, N.A.'s ("Defendant") motion for summary judgment. (Doc. 95). Plaintiffs Drs. Mack and Tullis ("Plaintiffs") filed a response and cross-motion for summary judgment on May 20, 2009 (Doc. 98) and Defendant filed a reply on June 10, 2009. (Doc. 104). The Court has jurisdiction under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (e, f) and 28 U.S.C. § 1332. For the reasons stated below, Plaintiffs' motion for summary judgment is denied (Doc. 98), and Defendant's motion is granted. (Doc. 95).

## I. Background

Plaintiffs allege that Defendant: (1) breached its fiduciary duty; (2) violated ERISA; (3) was negligent in failing to warn; (4) made "bogus" investments; (5) engaged in misrepresentation and fraud; and (6) violated security laws. (Doc. 1). On April 12, 2006, Defendant answered (Doc. 5), and on August 1, 2006 Defendant filed a motion to dismiss. (Doc. 20). The Court granted Defendant's motion to dismiss on November 21, 2006 (Doc. 41), and Plaintiff appealed on December 11, 2006. (Doc. 43). The United States Court of Appeals for the Sixth Circuit reversed that judgment on January 30, 2008, finding that Plaintiffs adequately stated a claim upon which relief may be granted. (Doc. 50). On April 29, 2009 Defendant filed a motion for summary

judgment (Doc. 95), and Plaintiff responded on May 20, 2009.  (Doc. 98).  The issue before the

Court is whether Defendant is liable for alleged breaches of fiduciary duty in violation of ERISA.

The facts of the case, as described in the Sixth Circuit's opinion of January 30, 2008, are as

follows:

> Plaintiffs David Tullis and Michael Mack are two physicians from Toledo who maintained pension funds through the Toledo Clinic Employees' 401(k) Profit Sharing Plan ("Plan"), an ERISA-governed, "defined contribution" pension plan. In the early 1990s, the plaintiffs chose William Davis of Continental Capital Corporation ("Capital") as their investment advisor.  In October 1999, the U.S. Securities and Exchange Commission entered a Temporary Restraining Order against Capital because two of its brokers were engaged in fraudulent activities. The plaintiffs contend that the defendant, UMB Bank, which served as the Trustee for the plan, knew of the fraud yet failed to inform them.

> In April 2001, the defendant bank filed suit against Davis and a subsidiary of Capital on behalf of the Plan, alleging that several investments were improper, severely declined in value immediately after being purchased, or simply never took place.  The plaintiff's allege that the defendant again failed to inform them of either Davis' or Capital's fraudulent activities, a required duty of a fiduciary. Additionally, the defendant continued to accept and honor allegedly forged investment directives from Davis without consulting or warning the plaintiffs. Consequently, according to the complaint, the plaintiffs continued to maintain their investment account with Davis.

> In the spring of 2003, a court order ended Capital's ability to conduct business and appointed the Security Investor Protection Program as Trustee. During the ensuing bankruptcy proceedings, it was discovered that a number of Davis' investments were nonexistent.  At this point the plaintiffs discovered the full extent of the losses to the value of their pension plans.  Tullis alleges as of February 28, 2003, UMB Bank represented the value of his retirement assets to be $724,561.29, while the actual value was $142,269.41, a difference of  $582,291.88. Mack contends that on July 1, 2001, the defendant represented the value of his retirement assets to be $1,613,407.87.  When Mack attempted to withdraw those assets, however, he discovered that they were only worth $420,793.57, a difference of $1,192,614.30.

> The Plaintiffs initially filed suit against Davis, Capital, the defendant, and others in the Lucas County Court of Common Pleas.  Those cases were stayed pending the outcome  of the bankruptcy proceedings.  The plaintiffs then requested the Toledo Pension Plan, which administered the 401(k) program, bring suit against

> the defendant for the bank's alleged breach of fiduciary duties as an ERISA trustee.
> The Plan declined to do so, citing a Master Trust Agreement ("MTA") that includes
> an indemnification clause holding the bank harmless from claims. Consequently,
> the plaintiffs filed this action in the Northern District of Ohio on January 24, 2006.

*Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 675-76 (6th Cir. 2008).

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also*

*Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."  *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) .  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## III.  Discussion

ERISA imposes high standards  of fiduciary duty upon ERISA plan administrators and asset handlers.  *See* 29 U.S.C. § 1104(a)(1) (2006); *see also Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).  Ordinarily, a fiduciary under ERISA has three primary duties.

First, the fiduciary has a "duty of loyalty", which calls for all decisions regarding the plan to be made in the interests of the participants and beneficiaries. *See* 29 U.S.C. § 1104(a)(1).  Second, the fiduciary must exercise a "prudent person" standard of care, "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." *Id.*  Lastly, a fiduciary under ERISA has a duty to act for the exclusive purpose of providing benefits to plan participants. *Id.*; *see also James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

Defendant argues that no liability exists as a fiduciary for losses resulting from Plaintiffs' exercise of control over their own assets, and therefore summary judgment is appropriate on its counterclaim for indemnification.  (Doc. 95).  Additionally, Defendant asserts that even if liable, the applicable statute of limitations limits Plaintiffs' recovery to losses incurred within the last six years *Id.*

Plaintiff argues that Defendant's affirmative defenses are procedurally barred, and that even if the affirmative defenses are permitted, Defendant retained their fiduciary duties as a "directed trustee", and is therefore liable for breach.  (Doc. 98).  Plaintiff further asserts that the applicable statute of limitations has not run, or should be extended due to equitable estoppel and tolling. *Id.*  Finally, Plaintiff argues that indemnification is improper because the Defendant breached its fiduciary duty, and therefore Defendant's motion should be denied. *Id.*

## A. Defendant's Motion for Summary Judgment

### 1. Safe Harbor Defense

Section 404(c) of ERISA relieves fiduciaries from liability for losses caused by a participant's individual exercise of control over assets. 29 U.S.C. § 1104(c); *see also LaRue v. Dewolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1025 (2008). The so-called "safe harbor" provided by 404(c) represents an affirmative defense to a claim for breach of fiduciary duty under ERISA. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir. 1996)). Under section 404(c), plan managers may avoid liability if: (1) the participant exercises independent control over the assets in the account, and (2) the participant is able to choose from a "broad range of investment alternatives." 29 C.F.R. § 2550.404c-1(b)(1) (2009).

Under the above cited regulations, a plan participant or beneficiary is provided an opportunity to exercise control over assets in his account if given a reasonable opportunity to give investment instructions to a plan fiduciary obligated to comply with such instructions, and has the opportunity to obtain sufficient information to make informed decisions regarding investment alternatives available under the plan. 29 C.F.R. § 2550.404c-1(b)(2). A plan participant or beneficiary is not considered to have "sufficient information" unless a plan beneficiary is provided a wealth of information, including:

> [C]lear labeling of the plan as § 1104 instrument, a description of the investment alternatives available, identification of designated investment managers, explanation of how to give investment instructions, a description of 'any transaction fees and expenses which affect the participant's... balance in connection with purchases or sales of interests', relevant names and addresses of plan fiduciaries...and materials related to voting, tender or other rights incidental to the holdings in the account.

*Hecker*, 556 F.3d at 587. The regulations provide numerous illustrations of the effect of section 404(c) on different plan scenarios, one of which is particularly instructive:

6

> Participant P instructs plan fiduciary F to appoint G as his investment manager pursuant to the terms of the plan which provide P total discretion in choosing an investment manager.  Through G's imprudence, G incurs losses in managing P's account...Plan fiduciary F has no fiduciary liability for G's imprudence because F has no obligation to advise P...and because F is relieved of co-fiduciary liability for G's actions by reason of section 404(c)(2).

29 C.F.R. § 2550.404c-1(f)(9).

Defendant argues that Plaintiffs exercised complete control over their accounts and related assets, and were provided a broad range of investment alternatives, and therefore Section 404(c) shields Defendant from liability.  (Doc. 95).  Defendant cites the "Master Trust Agreement" ("MTA") and plan documents that purportedly demonstrate opportunities afforded to Plaintiffs for individualized control.  *Id.*  Accompanying Defendant's motion for summary judgment are several documents, including a document labeled "Designation of Agent for an IDA", in which Dr. Tullis names Mr. Davis as his agent, and indicates the power and responsibilities vested in both Dr. Tullis and Mr. Davis.  (Doc. 95, Ex. I).  The document states that Dr. Tullis possesses an "individually directed account ('IDA')", which vests with him the sole power, right and duty to direct the investment and reinvestment of assets of the account, and the ability to delegate such powers and rights to his selected agent, in this case, Mr. Davis.  *Id.*  The aforementioned designation clearly provides Dr. Tullis with an opportunity to give investment instructions to a plan fiduciary obligated to comply with such instructions, and identifies designated investment managers.  "It is understood and agreed that it is my sole responsibility to establish, monitor and police limitations and restrictions, if such may be desired by me, on the amounts or percentage of assets in the IDA which the agent is authorized to manage and direct."  *Id.*  In his deposition, Dr. Mack indicates that he too possessed an IDA, and had direct control over his assets.  (Mack Dep., Apr. 29, 2009).  Additionally, the manual purportedly given to Plaintiffs, described as the "Individually Directed

Accounts Instructions and Forms" ("manual"), provides detailed information regarding the

accounts and facilitates the participants ability to make informed decisions.  (Doc. 95, Ex. 10).  As

Defendant notes, the first section in the manual, entitled "Introduction to IDAs", provides a clear

label that the plan in question falls within the scope of section 404(c) of ERISA.  *Id.*  Between the

manual and plan documents, Defendant provided Plaintiffs "sufficient information" within the

meaning of ERISA in order to properly establish the opportunity to exercise control.

In order to qualify for the "safe harbor" defense provided by section 404(c), a plan must

also provide the participant with a broad range of investment alternatives, which, under the

regulations, requires "provid[ing] at least three investment options and it must permit the

participants to give instructions to the plan with respect to those options at least once every three

months."  *Hecker*, 556 F.3d at 587 (quoting *Jenkins v. Yager*, 444 F.3d 916 (7th Cir. 2006)).  The

IDA manual allows for "a full range of investment opportunities limited only by law (or to a

limited range of investments if your Plan contains specific investment restrictions)."  (Doc. 95, Ex.

10).  Plaintiff does not rebut Defendant's contention that "[s]ubject to certain requirements

specified within the Plan documents and IDA Manuals, participants in the Toledo Clinic Plan were

permitted to invest in any asset administratively feasible for the Plan to hold, and as allowed by

law."  (Umbarger Aff. ¶ 15).  Because section 404(c) allows an affirmative defense to liability, *see*

*infra* Part III.B.1, Defendant has adequately established the availability of a broad range of

investment alternatives, and therefore properly invokes the "safe harbor" defense with respect to

Plaintiffs' claims.

### 2. *Statute of Limitations*

Defendant argues that Plaintiffs' claims, even if not resolved by section 404(c), are limited to those losses incurred within six years of filing the complaint, or shortened to three years due to actual knowledge of non-fraudulent fiduciary breach under the applicable statute of limitations. (Doc. 95).  The Court finds the "safe harbor" defense applicable in the instant case, and therefore statute of limitations issues need not be considered.

## B.  Plaintiff's Motion for Summary Judgment

### 1. Procedural Bar

Plaintiffs argue that permitting Defendant to raise the affirmative defense of section 404(c) would create prejudice, and has already been denied.  (Doc. 98).  On November 12, 2008, this Court denied Defendant's motion for leave to amend its answer and assert two additional affirmative defenses.  (Doc. 77).  However, the defenses sought to be raised, barring Plaintiffs' claims under 29 U.S.C. § 1104(c) and due to Defendant's position as a "directed trustee", were essentially denied for temporal reasons.  In its answer, Defendant had already raised the "safe harbor" defense provision in section 404(c) of ERISA:  "Plaintiffs' by their execution of separate investment directives and their designation of agent, are barred and estopped from any claims for loss or damage against the answering Defendant."  (Doc. 5 at ¶45).  The additional affirmative defenses merely sought to clarify the defense.  "An affirmative defense may be pleaded in general terms and will be held to be sufficient...as long as it gives plaintiff fair notice of the nature of the defense."  *Lawrence v. Chabot*, 182 F. App'x. 442, 456 (6th Cir. 2006) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1274).  Accordingly, Plaintiffs' contention that Defendant's may not raise the "safe harbor" defense lacks merit; Defendant has sufficiently pled the defense in general terms and given Plaintiff notice of the nature of the defense.

9

### 2. *Prohibited Transactions*

Plaintiffs argue that Defendant followed several investment directives that were prohibited under ERISA, and therefore breached its fiduciary duty.  (Doc. 108).  Plaintiffs assert that Defendants were empowered under ERISA, and obligated by a trust agreement to decline the prohibited transactions.  (Doc. 108).  Plaintiffs cite to several different excerpts from the Rudawsky deposition that purportedly describe numerous prohibited transactions permitted by Defendant.  (Doc. 108, Ex. A).

Section 406 of ERISA describes several transactions that are prohibited under the Act, including party-in-interest transactions, employer-investment transactions, and fiduciary conflicts.  *See* 29 U.S.C. § 1106.  Under section 406 of ERISA, a fiduciary breach occurs when a fiduciary *causes* the plan to engage in a transaction that said fiduciary knows or should know uses plan assets for the benefit of a party-in-interest.  *See Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995) (emphasis added).

In the instant case, although several prohibited transactions may have occurred, Defendant simply did not cause the plan to engage in those transactions.  As Plaintiffs' agent, Mr. Davis caused the plan to engage in transactions used for the benefit of a party-in-interest, Mr. Davis himself.  Plaintiffs exercised individualized control over their own assets and selected Mr. Davis as their agent, and therefore, as aforementioned, the Defendant Bank cannot be held liable for breach that occurs as a result of such individualized control.  Regulations accompanying section 404(c) of ERISA provide fiduciaries with the option to decline to implement instructions that would result in a prohibited transaction, but does not require such action.  *See* 29 C.F.R. 2550.404c-1(b)(2)(ii)(B)(1).  The Toledo Clinic Master Trust Agreement prohibits the trustee from engaging

10

in any prohibited transaction within the meaning of ERISA.  (Doc. 95, Ex. A).  However, section

406 of ERISA clearly prohibits fiduciaries from *causing* the plan to engage in prohibited

transactions, rather than simply allowing such transactions to occur.  Plaintiffs concede that

Defendant performed no review of the investment directives in question, but indicate that

Defendant was under an obligation as a fiduciary to do so.  (Doc. 108).  Plaintiffs' argument is

without merit, however, as Defendant was relieved of fiduciary obligations under 404(c), and

Defendant did not cause the prohibited transaction and therefore did not engage in a prohibited

transaction within the meaning of ERISA.

### 3.  *Valuation of Assets*

Plaintiffs argue that Defendant "had an affirmative obligation to provide fair and accurate

valuation information with respect to the Plaintiffs' Individual Investment Accounts."  (Doc. 108).

Plaintiffs assert that Defendant performed no review or valuation of the accounts with actual

knowledge of Mr. Davis' fraudulent behavior, and therefore breached its fiduciary duty.

However, under section 404(c) "no...fiduciary shall be liable for any loss, or by reason of

any breach" which results from a beneficiary's exercise of independent control.  29 C.F.R.

2550.404c-1(a).  Because the Court has established that Plaintiffs exercised independent control

over their plans, Defendant cannot be held responsible for the valuation breach in question that

resulted from Plaintiffs' exercise of independent control.  Accordingly, Plaintiff's argument that

Defendant breached its fiduciary duty by failing to provide fair and accurate valuation information

is without merit.

### 4.  *Safe Harbor Defense*

Plaintiffs argue that Defendant cannot absolve itself of liability through the "safe harbor" defense provided by section 404(c) due to enhanced fiduciary responsibilities and the concealing of material non-public facts regarding the investment from Plaintiffs.  (Doc. 108).  Plaintiffs characterize Defendant as a "directed trustee", and assert that a directed trustee has an obligation to not follow certain fiduciary instructions, and must exercise prudent, reasonable care in controlling assets.  (Doc. 98).

Under ERISA, a trustee "shall have exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a) (2006).  A directed trustee has similar responsibilities, "retain[ing] the discretion, and indeed the obligation, to follow only 'proper' directions of the Investment Advisor."  *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 761 (S.D.N.Y. 2003).  However, under the IDA, Plaintiffs' and their agent controlled their own assets, and as a result, section 404(c) shields Defendant from liability.  Section 404(c) provides Defendant with insulation from fiduciary duties that would otherwise ordinarily be imposed.  *See In re Ferro Corp. Erisa Litigation*, 422 F. Supp. 2d 850, 861 (N.D. Ohio 2006).  If a participant exercises control over their own assets within the meaning of ERISA, then "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c) (2006).

Accordingly, Defendant relieves itself of any fiduciary duties imposed through properly invoking the "safe harbor" defense, and Plaintiffs' contention of its inapplicability lacks merit.  As this Court has previously discussed, Plaintiffs' exercised control over their assets within the meaning of ERISA, and therefore no fiduciary responsibilities may be imposed for consequences of the individual's control over assets.

The "safe harbor" defense is unavailable when a plan fiduciary conceals material non-public facts from the beneficiary.  *See* 29 C.F.R. 2550.404c-1(c)(2).  This provision of the regulations accompanying section 404(c) of ERISA does not require a fiduciary to guarantee that all material facts are conveyed to participants; the regulations prohibit fiduciaries from concealing facts.  *See Lingis v. Motorola, Inc.*, No. 03-C-5044, 2009 WL 1708097, at *8 (N.D. Ill. June 17, 2009).  "Put  simply, when a plan administrator speaks, it must speak truthfully."  *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993).  In the instant case, Plaintiffs contend that Defendant had an affirmative duty to "inquire into the Plaintiffs' knowledge of this non-public information" regarding Plaintiffs' investments.  (Doc. 108).

A plan fiduciary may have an affirmative duty to disclose material non-public facts to a beneficiary in certain circumstances.  *See Eddy v. Colonial Life Insurance Co.*, 919 F.2d 747, 751 (D.C. Cir. 1990) ("Once Eddy presented his predicament...Colonial Life...had an affirmative obligation to inform"); *Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1302-03 (3d Cir. 1993) (holding that a fiduciary who is aware of a beneficiary's situation has a duty to convey complete and accurate information that was material to the beneficiary's circumstance); *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999) (finding that a trustee has an affirmative duty to inform when knowing that silence may be harmful).  However, all of the cases in which a fiduciary was found to have an affirmative obligation to disclose information first involved an inquiry initiated by a plan participant.  In the instant case, no such inquiry regarding the plan changes has been made.  In the absence of an inquiry, fiduciaries need not disclose changes made to a benefit plan to the beneficiary.  *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 428 (5th Cir. 2003).

13

Accordingly, because Plaintiffs made no timely inquiry into the plan changes, Defendant was under no affirmative duty to disclose changes.  The general duties of disclosure imposed by ERISA are equivalent to the duties not to conceal involved in qualifying for section 404(c) protection.  *Lingis*, 2009 WL 1708097, at *9.  "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries."  *See Varity Corp. v. Howe*, 116 S. Ct. 1065, 1074-75 (quoting *Peoria Union Stock Yards Co. v. Penn. Mut. Life Ins. Co.*,  698 F.2d 320, 326 (7th Cir. 1983)).  Plaintiffs argue that Defendant must have had actual knowledge of material non-public information regarding Mr. Davis after filing suit against him.  (Doc. 108).  However, Plaintiffs fails to assert any genuine issue for trial regarding facts Defendant *concealed*.  The "safe harbor" defense only becomes unavailable when Defendant has concealed material non-public information.  Plaintiff merely asserts that Defendant had actual knowledge of the information, but in no way indicates that any inquiry was made nor corresponding response shrouded.  Therefore, Plaintiffs' argument that the "safe harbor" defense is unavailable to Defendant due to concealment of material non-public information is without merit.

Plaintiffs next argue that Defendant breached their fiduciary duties, and therefore improperly seeks indemnification.  (Doc. 98).  Plaintiff further contends that Defendant cannot rely on exculpatory provisions within the agreement in order to relieve itself of liability.  *Id.*  As the Supreme Court noted, as a general rule, "trust documents cannot excuse trustees from their duties under ERISA."  *Cent. States, Se. and Sw. Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985).  While Plaintiffs are correct that the *trust documents* themselves cannot absolve Defendant of liability, the provisions within ERISA itself may.  Therefore, although the exculpatory

14

provisions throughout the plan documents cannot provide the sole basis for removal of liability, the "safe harbor" defense certainly can and does in the instant case.

All of Plaintiffs' claims rest on the assertion that Defendant has breached its fiduciary duty. The "safe harbor" defense relieves Defendant of the fiduciary duty ordinarily imposed by ERISA, and therefore the Court need not address Plaintiffs' additional arguments.

## IV. Conclusion

For the above stated reasons, the Court grants Defendant's motion for summary judgment. (Doc. 95). Plaintiffs' cross-motion for summary judgment is denied. (Doc. 98). Plaintiffs' claims are hereby dismissed.

IT IS SO ORDERED.

     s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

15