IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID H. TULLIS,

                Plaintiff,                Case No. 3:06 CV 7029

    -vs-

                                                  MEMORANDUM OPINION

UMB BANK, N.A., et al.,

                Defendant.

KATZ, J.

At issue is Defendant / Counter-Claimant UMB Bank, N.A.'s ("UMB") motions seeking indemnification for attorney's fees and expenses from Plaintiffs / Counter-Defendants Dr. David H. Tullis ("Dr. Tullis") and Dr. Michael S. Mack ("Dr. Mack"), (collectively "Plaintiffs"). Also pending before the Court are sundry discovery-related motions–all of which stem from UMB's request for attorney's fees–as well as Plaintiffs' third motion for reconsideration.

For the reasons that follow, UMB's motions for attorney's fees (Doc. 116; Doc. 137) are granted in part, UMB's motion for a protective order (Doc. 142) is granted, and UMB's motion to quash (Doc. 144) is denied. All of Plaintiffs' motions are denied. (Doc. 152; Doc. 120; Doc. 132).

**I. Procedural Background**

"Plaintiffs . . . are two physicians from Toledo who maintained pension funds through the Toledo Clinic Employees' 401(k) Profit Sharing Plan ("Plan"), an ERISA-governed, 'defined contribution' pension plan." *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 675 (6th Cir. 2008). As part of the Plan, the Toledo Clinic entered into a Master Trust Agreement ("MTA") with UMB, which designated UMB as a Plan Trustee. (Doc. 95-2).

> In the early 1990s, the plaintiffs chose William Davis of Continental Capital Corporation ("Capital") as their investment advisor. In October 1999, the U.S. Securities and Exchange Commission entered a Temporary Restraining Order against Capital because two of its brokers were engaged in fraudulent activities. The plaintiffs contend that [UMB] . . . knew of the fraud yet failed to inform them.

*Tullis*, 515 F.3d at 675.

In January 2006, Plaintiffs sued UMB in this Court alleging, *inter alia*, that UMB breached its fiduciary duty and violated ERISA. In April 2006, UMB filed a Counter-Claim against Plaintiffs seeking indemnification for any costs, including attorney's fees and expenses, that arose from defending the action. In August 2009 this Court granted summary judgment in favor of UMB both as to Plaintiffs' Complaint and UMB's Counter-Claim for indemnification. (Doc. 109; Doc. 110). Plaintiffs filed a motion for reconsideration on August 21, 2009, which this Court denied on September 21, 2009.[1]

On October 8, 2009, UMB filed the instant motion for attorney's fees and expenses on its claim for indemnification. (Doc. 116). Plaintiffs did not respond, but instead filed a second motion for reconsideration on October 12, 2009. Before this Court ruled on the second motion, Plaintiffs filed a Notice of Appeal to the Sixth Circuit on October 16, 2009. Plaintiffs then requested that the Sixth Circuit remand the matter to this Court for disposition of the motion. The Sixth Circuit denied Plaintiffs' request, (Doc. 126), and this Court subsequently denied Plaintiffs' second motion for reconsideration on January 19, 2010. (Doc. 127).

Contemporaneously with the above, Plaintiffs filed a motion on October 16, 2009, (Doc. 120), requesting that this Court order UMB to produce its "legal file" so that Plaintiffs may assess

---

[1] The Sixth Circuit ultimately affirmed this Court's decision granting summary judgment to UMB. (Doc. 128); *see Tullis v. UMB Bank, N.A.*, 423 Fed. Appx. 567 (6th Cir. May 18, 2011).

the reasonableness of the attorney's fees requested by UMB. UMB opposed the motion, (Doc. 139), and pursuant to this Court's Order (Doc. 130) filed a supplement to its original request for attorney's fees to reflect an updated balance of fees incurred during post-judgment motion practice. (Doc. 137).

On June 15, 2011, Plaintiffs filed their third motion for reconsideration. (Doc. 132). Moreover, on July 20, 2011, Plaintiffs filed a notice of their third set of discovery requests, (Doc. 138), and on August 18, 2011, Plaintiffs filed a notice of issuance of subpoenas *duces tecum* to the Toledo Clinic, (Doc. 141), demanding production of detailed billing and payment records between UMB, The Toledo Clinic, and UMB's counsel. UMB responded with a motion for a protective order barring further discovery, (Doc. 142), and a motion to quash Plaintiffs' subpoenas. (Doc. 144).

On September 12, 2011, this Court issued an order granting UMB leave to brief the issue of indemnification as it relates to UMB's claim for attorney's fees. (Doc. 148). Plaintiffs were granted one week to respond. *Id*. UMB filed its brief ("indemnification brief") on October 3, 2011. (Doc. 151). Instead of responding on the merits, however, Plaintiffs filed a FED. R. CIV. P. 12(f) motion to strike the affidavits accompanying UMB's indemnification brief. (Doc. 152). UMB responded to the motion to strike on October 20, 2011. (Doc. 153).

On October 24, 2011, this Court granted UMB leave to file documents under seal that prove its obligation to repay the Toledo Clinic for any attorney's fees that were paid by the Toledo Clinic on UMB's behalf. (Doc. 154). Instead of filing proof of its obligation to repay the Toledo Clinic, UMB filed 137 pages of RCO attorneys' billing entries that were invoiced to, and paid by, the Toledo Clinic. (Doc. 156; Doc. 157).

3

## II. UMB's Request for Attorney's Fees and Costs

### A. Plaintiffs' Indemnification Responsibility

Pursuant to this Court's order granting UMB summary judgment on its Counter-Claim for indemnification, and pursuant to the Sixth Circuit's affirmation of that ruling, UMB seeks indemnification by Plaintiffs for attorney's fees and expenses in the amount of $470,620.78.[2] (Doc. 151 at 7). The legal representation and payment method that led to the above dollar figure is more complicated than a one-firm, one-payor scenario. Instead, payment of UMB's legal fees involved an indemnification relationship between UMB and the Toledo Clinic, whereby a provision of the MTA obligates the Toledo Clinic to indemnify UMB for any losses it sustained under the agreement, including the fees and expenses associated with the instant litigation. (*See* MTA, Doc. 95-2 at ¶13; Doc. 151-1 at ¶3). Additionally, UMB claims it is obligated to repay the Toledo Clinic if UMB recovers any such attorney's fees.

Applying this indemnification rubric to the instant matter, UMB was initially represented by Mansour Gavin Gerlack and Manos Co. LPA, ("MGGM"), and UMB has paid MGGM $81,903.34. (Doc. 151 at 3; Doc. 151-1 at ¶¶3-4). Pursuant to the MTA's indemnification provision, UMB's primary representation was taken over by Robison, Curphy and O'Connell

---

[2] UMB's original motion sought attorney's fees and expenses in the amount of $358,038.82. (Doc. 116 at 9). With leave of this Court, UMB filed an addendum to its motion to reflect the updated amount of fees and expenses incurred–$466,657.46–from defending against an additional twenty-one months of post-judgment motion practice and an appeal to the Sixth Circuit. (Doc. 137 at 2). Again with leave of this Court, UMB briefed the issue of indemnification, and included in its brief the updated–and now current–amount of fees and expenses: $470,620.78. (Doc. 151 at 7). UMB's indemnification brief reserves the right to seek additional fees and expenses as they continue to be incurred. *Id*.

("RCO") in July 2006, and the Toledo Clinic began paying for the legal fees charged by RCO.[3] (Doc. 151 at 3; Doc. 151-1 at ¶3, ¶5). RCO has billed $388,717.44 in connection with the matter. (Doc. 151-2 at ¶4). UMB now seeks to be indemnified by Plaintiffs for the combined total of MGGM's fees and RCO's fees: $470,620.78.[4]

Throughout their motions, Plaintiffs advance several arguments in an attempt to avoid indemnifying UMB. **First**, Plaintiffs contest the reasonableness and necessity of UMB's attorney's fees. (Doc. 120 at 2). Specifically, Plaintiffs opine that the amount of fees "appear [sic] grossly excessive," and assert that "Plaintiffs' counsel's attorney's fees are a small fraction of the fees being claimed by [UMB]." (Doc. 120 at 2-3).

UMB conversely suggests that Plaintiffs are responsible for the size of the bill vis-à-vis their post-judgment motion practice and discovery requests, which include three motions for reconsideration, two appeals to the Sixth Circuit, a motion requesting that UMB produce its entire "legal file," and a belated third set of formal discovery requests. (Doc. 116 at 3). In any event, UMB submitted briefs and affidavits attesting to the reasonableness of the hours worked and the rates charged by its attorneys under Ohio law. (*See generally* Doc. 116 at 5-8 and attached affidavits). Furthermore, notwithstanding proof that the attorney's fees are reasonable, UMB correctly asserts that "as a matter of Ohio law where the promise is to indemnify from 'all'

---

[3] While RCO assumed primary responsibility in July 2006, MGGM remained involved in UMB's representation. (Doc. 151-1 at ¶3).

[4] Not included in the $470,620.78 currently sought by UMB is $1,671.32 invoiced by MGGM but not yet paid by UMB, as well as $4,905.00 of RCO's un-billed work in process. (*See* Doc. 151 at 3; Doc. 151-1 at ¶4; Doc. 151-2 at ¶4). As noted above, UMB's indemnification brief reserves the right to seek additional fees and expenses as they continue to be incurred. (Doc. 151 at 7).

attorney's fees, the surety is not required to prove either the necessity or the reasonableness of the fees incurred and paid." *Sheet Metal Workers Local 98 Pension Fund v. Airtab, Inc.*, 2009 U.S. Dist. LEXIS 27052, at *7-*8 (S.D. Ohio April 1, 2009) (citing *Am. Contractor's Indem. Co. v. Nicole Gas Prod., Ltd.*, 2008 WL 4416671, at *6 (Ohio Ct. App. Sept. 30, 2008)). Thus, because the indemnification agreements in this case designate "any and all" costs as those which must be indemnified–and there is no limitation as to reasonableness–Plaintiffs' argument is unavailing. *See Am. Contractors*, 2008 WL 4416671, at *6 (indemnity agreement provided for payment of "any and all" attorney's fees).

**Second**, Plaintiffs postulate a scenario in which the Toledo Clinic never paid RCO's fees at all. Instead, Plaintiffs theorize that UMB may have itself paid RCO's fees, that the Toledo Clinic reimbursed those fees to UMB pursuant to the MTA's indemnification provision, and that UMB is now seeking a windfall double-recovery from Plaintiffs. Plaintiffs offer no evidence in support of their "theoretical musing," *see Fisher v. Trinova Corp.*, 1998 U.S. App. LEXIS 26249, *28 (6th Cir. Oct. 13, 1998), but apparently ask this Court to disregard the evidence of record which wholly negates it. This Court will not do so. As explained above, UMB's General Counsel submitted an affidavit stating that the Toledo Clinic paid for RCO's fees. (Doc. 151-1 at ¶3, ¶5). Thus, Plaintiffs' argument fails.

**Third**, Plaintiffs contest the affidavit of UMB's General Counsel Dennis Rilinger, (Doc. 151-1), and the most recent affidavit of RCO attorney Mark Abramson, (Doc. 151-2). The affidavits–which accompany UMB's indemnification brief, (Doc. 151)–establish the amount of outstanding attorney's fees and describe the indemnification relationship between UMB and the Toledo Clinic. In a FED. R. CIV. P. 12(f) motion to strike–which Plaintiffs filed in lieu of a

6

response to UMB's indemnification brief–Plaintiffs contend the affidavits violate the requirement that "[a]ny affidavit supporting a motion must be served with the motion." FED. R. CIV. P. 6(c)(2). Specifically, Plaintiffs argue that UMB was required to file the affidavits with its original request for attorney's fees, not with its indemnification brief. Moreover, Plaintiffs urge that the affidavits improperly bolster UMB's motion for attorney's fees, and that "[s]uch 11th hour motion practice denies a non-moving party of its reasonable opportunity to reply to all of the issues presented." (Doc. 152 at 3-4).

Plaintiffs are correct that FED. R. CIV. P. 6(c)(2) generally requires that affidavits accompany a party's original motion. Such a rule helps prevent "a scenario in which endless sur-reply briefs are filed . . . or [a situation where] a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them . . . ." *Hardy v. Jim Walter Homes, Inc.*, 2008 U.S. Dist. LEXIS 26842, at *33 (S.D. Ala. April 1, 2008); *accord Peters v. The Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002). As explained above, however, UMB's filing was submitted pursuant to this Court's order granting UMB leave to brief the issue of indemnification, (Doc. 148), not as a standalone reply.[5] Moreover, to the extent that UMB's indemnification brief was a reply, the attached affidavits appropriately respond to a new issue that Plaintiffs raised in their opposition brief; namely, the theory that UMB was reimbursed by the Toledo Clinic and is now seeking a windfall double-recovery. *See Peters*, 285 F.3d at 476-77 (affidavits properly attached to reply brief when they contested new issues first brought to light in adversary's opposition brief); *Fisher*, 1998 U.S.

---

[5] That UMB chose to style its indemnification brief as a "reply" to Plaintiffs' opposition to attorney's fees does not alter the authority under which the brief was submitted.

App. LEXIS 26249, at *28 (affidavits in reply brief properly "provided concrete proof rebutting [adversary's newly raised] theoretical musings and clarified for the court the actual state of affairs . . . .").[6] Furthermore, this Court will not accept Plaintiffs' audacious attempt at using their opportunity for responding to UMB's affidavits to insist that they did not have an opportunity to respond. Per this Court's order, Plaintiffs were granted one week to respond to UMB's filing. (Doc. 148). Instead of responding, they filed the instant FED. R. CIV. P. 12(f) motion to strike in which they decry their supposed disadvantage. Plaintiffs' argument is not well taken, and their motion to strike is denied.

**Fourth**, Plaintiffs argue that UMB has not sufficiently proven that it is obligated to repay the Toledo Clinic for the $388,717.44 for which the Toledo Clinic paid on UMB's behalf. Indeed, the only evidence of UMB's purported obligation is an affidavit from UMB's General Counsel, Dennis Rilinger, which states that "UMB is obligated to reimburse the Toledo Clinic from damages awarded on UMB's Counterclaim up to the amount paid by the Toledo Clinic for RCO's representation of UMB less any amounts paid directly by UMB for legal representation . . . ." (Doc. 151-1 at ¶5).

On Plaintiffs' challenge to the sufficiency of Rilinger's affidavit, this Court granted UMB thirty days to file documents under seal proving its obligation to repay the Toledo Clinic. (Doc. 154). Instead of filing such proof, UMB filed 137 pages of RCO attorneys' billing entries that were invoiced to, and paid by, the Toledo Clinic. (Doc. 156; Doc. 157). Such billing entries do

---

[6] FED. R. CIV. P. 6(c)(2)'s requirement that an affidavit be filed with the original motion was codified at FED. R. CIV. P. 6(d) until 2007. *Compare* FED. R. CIV. P. 6(d) (2006) (revised 2007), and FED. R. CIV. P. 6(c)(2) (2007). Thus, *Peters* and *Fisher* reference Rule 6(d) instead of Rule 6(c)(2). *Peters*, 285 F.3d at 476; *Fisher*, 1998 U.S. App. LEXIS at *25.

not provide proof that UMB is obligated to repay the Toledo Clinic, regardless of which party paid for the billings. In the interest of fairness, however, and in the interest of judicial economy, this Court withholds judgment as to whether UMB is obligated to repay the Toledo Clinic. UMB will be granted leave for forty-five days to file underlying documents proving its obligation to repay the attorney's fees and expenses paid for by the Toledo Clinic. Such documents may be filed under seal if UMB so desires.

**B. Damnification**

In addition to Plaintiffs' arguments discussed, *supra*, Plaintiffs contend that UMB is not yet entitled to be indemnified under Ohio law because it has not incurred "an actual cost, expense, loss, judgment, liability, or expenditure."[7] (Doc. 149 at 4). Specifically, Plaintiffs invoke *Dana Corp. v. Fireman's Fund Ins. Co.*, 169 F. Supp. 2d 732 (N.D. Ohio 1999) (Carr, J.), *aff'd sub nom Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107 (6th Cir. 2001), which held that under an indemnity contract in Ohio, a party must be "damnified"–i.e., it must incur an actual damage or loss–before the party is entitled to indemnification. 169 F. Supp. 2d at 736. Moreover, *Dana* held that contracts for indemnity are necessarily different from contracts requiring one party to pay a sum certain to another party. *Id*. at 736-37 (citations omitted). Whereas contracts to pay

---

[7] Notably, the parties do not specify which state's law governs their indemnification dispute, and the relevant indemnification agreements do not uniformly designate a controlling law. The Toledo Clinic Employees' 401(K) Profit Sharing Plan & Trust states that Ohio law controls the "Plan," and Missouri law controls the "Trust." (Doc. 95-5 at ¶12.1). The Toledo Clinic Employees' Money-Purchase Pension Plan, (Doc. 95-3), the Toledo Clinic Employees' 401(K) and Profit-Sharing Plan, (Doc. 95-4), and the Designation of Agent for an IDA, (Doc. 95-10), do not specify a controlling law. The MTA states that Missouri law controls. (Doc. 95-2 at ¶14.2). Despite this ambiguity, however, the parties repeatedly invoke Ohio law when arguing the issue. (*See* Doc 116 at 5; Doc. 149 at 6; Doc. 146 at 2-4; Doc. 151 at 4 n.3). Accordingly, this Court draws on Ohio law to settle the dispute.

provide a right of action as soon as a debt matures and is unpaid, contracts for indemnity provide a right of action only *after* a party has been damnified. *Id.* (citing *Henderson-Achert Lithographic Co. v. John Shillito Co.*, 64 Ohio St. 236, 254-55 (Ohio 1901)). The Sixth Circuit affirmed this understanding of Ohio's indemnification law. *Dana*, 251 F.3d at 1114-15, *aff'g* 169 F. Supp 2d 732 ("We agree with the district court's reasoning and conclusion . . . . We disagree with the Trust in all respects.").

In the instant matter, the parties do not suggest that their contract is anything other than one for indemnification. Moreover, the relevant indemnification provisions, which require Plaintiffs to "indemnify and hold [or save] harmless" UMB, bear out this conclusion. *See Dana*, 251 F.3d at 1116 (contract to "reimburse and indemnify," and nothing more, is a contract for indemnity, not a contract to pay). The parties are therefore litigating an indemnity contract, and the issue becomes whether UMB has already been damnified such that it is entitled to indemnification under Ohio law.

Noting that the Toledo Clinic paid for RCO's fees and expenses, Plaintiffs insist that UMB has not been damnified because the total amount of money UMB is seeking has not yet come out of its pocket. (*See* Doc. 146 at 2-6; Doc. 149 at 3-6). Conversely, UMB marginalizes the applicability of *Dana*, and maintains that its purported obligation to repay the Toledo Clinic is a liability sufficient to constitute damnification. (*See* Doc. 151 at 4, n.3 ("To the extent that [*Dana*] has any bearing on the instant issue, [UMB has in fact been damnified] [b]ecause UMB has actually paid for certain of its legal fees, and because UMB is liable to the Toledo Clinic for the remaining fees incurred on its behalf . . . .")). Moreover, UMB urges that the indemnity provision in the Designation of Agent for an IDA (Doc. 95-10) expressly contemplates the mere accrual of

10

liability as sufficient to trigger indemnification. (*See* Doc. 151 at 6 (citing Doc. 95-10) (Plaintiffs shall indemnify UMB "against any and all costs, expenses, losses, judgments and ***liabilities of any nature whatsoever***, arising from any claim, demand, or cause of action from any source whatsoever . . . ." ) (emphasis added)).

UMB's argument is not persuasive. The Sixth Circuit in *Dana* roundly rejected the notion that an indemnification agreement's use of the word "liability" can negate the prerequisite of damnification. *See Dana*, 169 F. Supp. 2d at 738 ("Whether the agreement referred to the losses or liabilities of Smith & Kanzler Company is immaterial–Dana's duty to indemnify is limited to compensating Phillip Carey for the extent of its damnification–not for what Smith & Kanzler Company itself may have been liable."). Nor can it redefine "damnification" as requiring anything other than an actual loss. *See Dana*, 251 F.3d at 1116 ("We are not persuaded otherwise by the Trust's attempt to distinguish between 'loss' and 'liability' for purposes of determining when the obligation to indemnify is triggered."). Furthermore, that UMB has paid out of its own pocket $81,903.34 of MGGM's fees does not constitute damnification with respect to the remaining $1,671.32 that MGGM has invoiced to UMB, but that UMB has not yet paid. Moreover, UMB's payment to MGGM certainly does not damnify it with respect to the $388,717.44 of RCO's fees that were paid by the Toledo Clinic.

This is not to suggest that Plaintiffs may avoid indemnifying UMB for the entire amount requested. As explained above, Plaintiffs have a contractual obligation to indemnify UMB against any and all attorney's fees and costs arising out of the instant litigation. Plaintiffs' obligation is not *triggered*, however, until UMB has been damnified. Accordingly, Plaintiffs must immediately indemnify UMB the $81,903.34 that UMB has paid MGGM. This Court withholds judgment,

however, regarding UMB's damnification with respect to the $388,717.44, and with respect to any other attorneys' fees and expenses arising from the instant litigation. As with the issue of UMB's obligation to repay the Toledo Clinic, UMB will be grated leave for forty-five days to file payment records, accompanied by affidavits, proving that UMB has been damnified as to any outstanding attorneys' fees and expenses. Upon a timely filing as outlined herein, this Court will issue an Order directing Plaintiffs to indemnify UMB.[8]

### III. Discovery-Related Motions

In the wake of UMB's motions for attorney's fees, Plaintiffs engaged in a series of attempts at obtaining discovery–ostensibly to determine the reasonableness of UMB's fees, and to explore the theory that UMB is angling for a windfall double-recovery. Specifically, on October 16, 2009, Plaintiffs filed a motion requesting a court order that UMB be required to turn over its "legal file" so an expert can determine whether UMB's attorney's fees are reasonable. (Doc. 120). On July 20, 2011, Plaintiffs filed notice of its third set of discovery requests, which seek information related to attorney's fees. (Doc. 138). Finally, on August 18, 2011, Plaintiffs served on the Toledo Clinic two subpoenas *duces tecum* seeking a record of all payments that the Toledo Clinic made to UMB, and to UMB's counsel. (Doc. 141). Currently pending before the Court are Plaintiffs' motion requesting production UMB's legal file, (Doc. 120), UMB's motion for a protective order to bar Plaintiffs from engaging in further discovery, (Doc. 142), and UMB's motion to quash the subpoenas *duces tecum*. (Doc. 144).

---

[8] This Court recognizes that, given the complexity of payment relationships, UMB's damnification may result from UMB paying its lawyers directly, from UMB indemnifying the Toledo Clinic pursuant to the MTA, or from some combination thereof.

**First**, Plaintiffs' motion requesting production of UMB's entire legal file is over broad and seeks privileged information. Request denied.

**Second**, UMB's motion for a protective order barring Plaintiffs from engaging in further discovery is granted. More than two years after the expiration of the discovery deadline, and without leave of this Court, Plaintiffs filed a third set of formal discovery requests seeking information related to UMB's attorney's fees. Additionally, and as noted herein, Plaintiffs filed a motion requesting UMB's entire legal file, and have served two non-party subpoenas related to UMB's attorney's fees.

UMB correctly asserts that "Plaintiffs have been on notice of UMB's Counterclaim [for attorney's fees] since it was filed on April 12, 2006 . . . . Plaintiffs' opportunity to conduct whatever discovery they deemed necessary to defend against this Counterclaim has long since passed . . . ." (Doc. 142 at 2-3). Further, as explained below, none of Plaintiffs' belated attempts at discovery seek information that is either relevant or needed. As such, Plaintiffs' untimely and duplicative discovery requests directly contravene the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Moreover, Plaintiffs' requests give rise to the sort of annoyance, undue burden, and expense sought to be precluded by FED. R. CIV. P. 26(c). Accordingly, UMB's motion for a protective order barring Plaintiffs from engaging in further discovery is granted, to include Plaintiffs' third set of formal discovery requests. (Doc. 141).

**Third**, UMB's motion to quash Plaintiffs' subpoenas *duces tecum* must be denied. The subpoenas, which were served on the non-party Toledo Clinic, demand:

(1) **A record of all payments** made for billings received from UMB Bank or from billings received from legal counsel representing UMB Bank in the pending

13

>Federal Court action bearing this case number; (2) If you have paid Robinson [sic], Curphey & O'Connell for representing UMB Bank, N.A., **produce a record of those payments** giving dates and amounts.

(Doc. 141-1; Doc. 141-2) (emphasis added).

UMB contends the subpoenas improperly demand production of privileged information in violation of Fed. R. Civ. P. 45(c)(3)(A)(iii), because "[a]ny relationship between the Toledo Clinic and [UMB] which might impose an obligation by one to pay legal fees incurred on behalf of the other is entitled to privilege between those entities and their attorneys." (Doc. 144 at 3). UMB also argues the subpoenas impose an undue burden in violation of Fed. R. Civ. P. 45(c)(3)(A)(iv) because they require production of information that is irrelevant and unneeded.

Regarding UMB's privilege argument, UMB overstates the issue at hand. Plaintiffs' subpoenas request payment records, and payment records alone. Thus, the relevant issue is whether records reflecting payment of the disputed attorney's fees are protected by either the attorney-client privilege or the work product privilege. In the instant matter, they are not.

The attorney-client privilege "does not envelope everything arising from the existence of an attorney-client relationship." *United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir. 1964). "The attorney-client privilege only precludes disclosure of *communications* between attorney and client and does not protect against disclosure of the facts underlying the communication." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985); *see also United States v. Haddad*, 527 F.2d 537, 538-39 (6th Cir. 1975) ("In the absence of special circumstances, the amount of money paid or owed to an attorney by his client is generally not within the attorney-client privilege."); *United States v. Skeddle*, 989 F. Supp. 890, 904 (N.D. Ohio 1997) (Carr, J.) (quoting *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989)) ("To be

14

given privileged status, 'fee information must amount to or reveal confidential information regarding the advice sought from the attorney.'"). Similarly, while the work product privilege protects an attorney's mental impressions that may be reflected in his or her *billing records*, the privilege does not extend to *payment records*, where no such attorney work product is revealed. *See Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001). Thus, because Plaintiffs' subpoenas do not require disclosure of privileged attorney-client communications, and do not require disclosure of an attorney's work product, the subpoenas are not violative of a legal privilege.

Regarding UMB's undue burden argument, UMB correctly asserts that the relevance of, and need for information are factors in determining whether a subpoena imposes an undue burden. *See Light Sources, Inc. v. Cosmedico Light, Inc.*, 2005 U.S. Dist. LEXIS 15253, at *8-*9 (N.D. Ohio July 28, 2005) (Gaughan, J.) (citing *Am. Electric Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)) ("Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents . . . and the burden imposed."). Moreover, because Plaintiffs' subpoenas ostensibly seek to determine the reasonableness of fees, and in light of the fact that this Court determined, *supra*, that reasonableness is not relevant to the matter at hand, it follows that the information subpoenaed by Plaintiffs is likewise irrelevant. Further, to the extent Plaintiffs' subpoenas seek information to verify that UMB has been damnified, such information is unneeded by Plaintiffs. As explained above, this Court has ordered UMB to file proof of damnification before it is entitled to any fees not already awarded in this Memorandum. Plaintiffs therefore have no need to subpoena information that this Court has ordered UMB to file.

15

While Plaintiffs seek irrelevant and unneeded information, however, UMB has no standing to quash the subpoenas on grounds of undue burden. *See Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303 (N.D. Ohio 2002) (Limbert, M.J.) (citing *Clayton Brokerage Co., Inc. v. Clement*, 87 F.R.D. 569 (D. Md. 1980)) (notwithstanding subpoena's violation of FED. R. CIV. P. 45(c)(3)(A), movant party's motion to quash denied for lack of standing because subpoena was served on a *non-party*, and did not implicate a right or privilege belonging to movant party). Therefore, UMB's motion to quash Plaintiffs' subpoenas must be denied.

## IV. Plaintiffs' Third Motion for Reconsideration

On June 15, 2011, Plaintiffs filed their third motion for reconsideration of this Court's August 8, 2009 entry of summary judgment in favor of UMB.[9] UMB did not respond. This Court finds that Plaintiffs' motion is baseless and must be denied.

**First**, Plaintiffs object that this Court denied their second motion for reconsideration after the Sixth Circuit–where Plaintiffs' summary judgment appeal was then pending–declined Plaintiffs' request to remand the matter for disposition of the second motion. (Doc. 126). In the instant, third motion for reconsideration, Plaintiffs suggest this Court did not have the authority to deny the second. "Querry: Did the District Court have jurisdiction to do so once the Appellate Court refused to remand it to him for a decision?" (Doc. 132 at 2) (emphasis omitted).

FED. R. CIV. P. 62.1(a)(2) controls this issue:

---

[9] Plaintiffs' motion requests that this Court "amend or alter its Decision as issued on the 18th day of May, 2011 . . . ." (Doc. 132 at 1). Notably, this Court did not issue a decision on May 18, 2011. The Sixth Circuit Court of Appeals did, however, affirm summary judgment in favor of Defendants on May 18, 2011, and it is presumably this decision to which Plaintiffs are referring. In any event, this Court construes Plaintiffs' motion as a request to reconsider *this Court's* judgment in favor of Defendants.

16

> **(a) Relief Pending Appeal**. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>> **(1)** defer considering the motion;
>> **(2)** *deny the motion*;
>> **(3)** state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

FED. R. CIV. P. 62.1(a) (emphasis added). Clearly, this Court had the authority under FED. R. CIV. P. 62.1 (a)(2) to deny Plaintiffs' second motion, notwithstanding the Sixth Circuit's denial of remand.[10]

**Second**, invoking FED. R. CIV. P. 59-60, Plaintiffs advance several substantive arguments in an attempt to re-litigate summary judgment. Plaintiffs do not specify which provisions of FED. R. CIV. P. 59-60 provide a basis for their motion and arguments, and this Court finds none.

A motion for relief under FED. R. CIV. P. 59 must be filed within twenty-eight days after the entry of judgment. *See* FED. R. CIV. P. 59(b), (d), (e). A motion for relief under FED. R. CIV. P. 60 "must be made within a reasonable time–and for reasons (1), (2), and (3) no more than a year after the entry of the judgment . . . ." *See* FED. R. CIV. P. 60(c)(1). The instant motion was filed on June 15, 2011, more than twenty-two months after this Court entered judgment in favor of UMB. Thus, Plaintiffs' motion does not satisfy any of the express time lines in FED. R. CIV. P. 59-60. Moreover, to the extent Plaintiffs attempt to invoke FED. R. CIV. P. 60(b)(4)-(6), the motion was not filed within a "reasonable time." *See Dillard v. Nat'l Union Fire Ins. Co.*, 2011 U.S. Dist.

---

[10] Indeed, when the Sixth Circuit denied Plaintiffs' remand request, it cited FED. R. CIV. P. 62.1(a)(2) and its corresponding Rule of Appellate Procedure. (*See* Doc. 126). Such an explicit reference should have been sufficient to satisfy Plaintiffs' "query" prior to their decision to file a third motion for reconsideration.

17

LEXIS 81334, at *3-*4 (E.D. Mich. July 26, 2011) (Plaintiff's Rule 60(b) motion not filed within a "reasonable time" where fourteen months and eighteen months elapsed after judgments from which plaintiff sought relief, and where plaintiff "essentially [sought] reconsideration and [raised] the same type of arguments already presented to, and rejected by, [the District Court]."). Plaintiffs' third motion for reconsideration is denied.

**V**. **Conclusion**

For the reasons stated herein, this Court rules as follows:

UMB's motions (Doc. 116; Doc. 137) requesting that Plaintiffs indemnify UMB's attorney's fees and expenses are granted in part. Plaintiffs are hereby ordered to indemnify UMB in the amount of $81,903.34;

UMB is hereby granted leave for forty-five days to:

1. File documents under seal proving its obligation to repay the Toledo Clinic for the $388,717.44 in attorney's fees and expenses that the Toledo Clinic paid on UMB's behalf;

2. File proof that it has been damnified with respect to any outstanding attorney's fees and expenses arising from this matter, including with respect to the $388,717.44 paid by the Toledo Clinic.

Upon such timely filing, this Court will enter an order directing Plaintiffs to indemnify UMB for those fees and expenses.

Plaintiffs' FED. R. CIV. P. 12(f) motion to strike UMB's affidavits and arguments (Doc. 152) is denied.

Plaintiffs' request that UMB be ordered to produce its legal file (Doc. 120) is denied.

UMB's motion for a protective order to bar further discovery (Doc. 142) is granted. Plaintiffs are prohibited from engaging in further discovery including with respect to Plaintiffs' third set of written discovery requests served on July 20, 2011.

UMB's motion to quash Plaintiffs' subpoenas *duces tecum* (Doc. 144) is denied.

Plaintiffs' third motion for reconsideration (Doc. 132) is denied.

IT IS SO ORDERED.

                                            S/ *David A. Katz*
                                            DAVID A. KATZ
                                            U. S. DISTRICT JUDGE